# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES LAWSON (#2007-0073481), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 09 C 4583 |
| | ) | |
| SALVADOR GODINEZ, WILLIAM THOMAS | ) | Judge Ronald A. Guzmán |
| CORRECTIONAL OFFICER BARNES, and | ) | |
| CORRECTIONAL OFFICER HOPKINS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Charles Lawson, a Cook County Jail inmate, has sued Cook County Jail Executive Director

Salvador Godinez, Superintendent William Thomas and Correctional Officers Kelvin Barnes and

Kevin Hopkins for violating his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges

that defendants acted with deliberate indifference to his safety and need for medical attention

resulting from an attack by other inmates. Defendants have moved for summary judgment. For the

following reasons, the Court grants the motion.

## Facts[1]

On January 28, 2009, Lawson was housed at the Cook County Jail ("CCJ") in Division 9 on

Tier 1G, an administrative segregation unit in which each detainee is allowed to be out of his cell

---

[1]Defendants filed their Local Rule 56.1 Statement and served *pro se* plaintiff Lawson with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" that explained the consequences of the failure to respond to the statements of material facts under Fed. R. Civ. P. 56(e) and Local Rule 56.1. A litigant's failure to respond to a Local Rule 56.1 Statement results in a court's deeming the uncontroverted statements as admitted. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Lawson did not respond to defendants' Rule 56.1 Statement. (*See* Pl.'s Resp. Defs.' Summ. J. Mot. ("Pl.'s Resp.").) The Court granted him an extension of time to further respond to the summary judgment motion, but he failed to file any additional pleadings. Accordingly, the Court deems admitted defendants' statements of fact, which are supported by the record.

for one hour per day, one cell at a time.  (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 1, 3; Compl. ¶ V.1.)  Tier

1G houses detainees who have been found guilty of possession of a weapon while in CCJ.  (Defs.'

LR 56.1(a)(3) Stmt. ¶ 3.)  In January 2009, Kelvin Barnes was the head officer of Tier 1G and

Kevin Hopkins was his backup officer.  (*Id.* ¶ 4.)  William Thomas was the superintendent of

Division 9, and Salvador Godinez was, and is, the Executive Director of the CCJ.  (*Id.*)

At 3:30 a.m. on January 28, 2009, an inmate gained access to the control area of the tier and

began "popping" open cell doors.  (*Id.* ¶ 5; *see* Defs.' Ex. 1, Pl.'s Dep. 25-26, Apr. 13, 2010.)

Twelve to fifteen inmates exited their cells and began fighting each other.  (Defs.' LR 56.1(a)(3)

Stmt. ¶¶ 6-7.)  Upon seeing inmates out of their cells, Barnes immediately called an "all available"

– a call to all available, not otherwise occupied, personnel to provide assistance.  (*Id.* ¶¶ 8-9.)

Backup officers arrived within two to three minutes.  (*Id.* ¶ 11.)  Barnes and Hopkins did not

attempt to break up the fights prior to backup arriving, given that doing so would have been

dangerous and would have jeopardized their safety.  (*Id.* ¶ 10.)

Lawson was in his cell during the above described incident.  (*Id.* ¶ 12.)  Prior to the incident,

Lawson did not have a problem with any particular inmate on his tier and had not reported any

problems with any Tier 1G inmate.  (*Id.*¶¶ 13-14.)  Several inmates entered Lawson's cell, Lawson

and the inmates began to wrestle, during which time one of the inmates sliced Lawson's upper arm

with a piece of metal and Lawson's hand was slammed in his cell door.  (*Id.*¶¶ 15-16; *see* Defs.' Ex.

1, Pl.'s Dep. 34-39.)

After the incident, a sergeant, who is not named as a defendant in this case, walked by

Lawson's cell, asked if he needed medical attention and then ordered that Lawson be taken out of

his cell. (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 17-18.)  The sergeant saw the puncture wound to Lawson's

arm.  (*See* Defs.' Ex. 1, Pl.'s Dep. 42.)  Lawson was taken to see a nurse later that morning before

he went to court, and the nurse dressed the puncture wound, which had stopped bleeding, with

gauze and tape.  (*Id.* 43-44, 46; *see* Defs.' LR 56.1(a)(3) Stmt. ¶ 18.)  Lawson stated that the

slammed door on his hand caused a bone to protrude from his hand.  (*See* Defs.' Ex. 1, Pl.'s Dep.

52-53.)  However, he acknowledged that x-rays of his hand that were taken in July 2009 showed no

injury.  (*Id.*)

Later in the morning on January 28, 2009, Lawson went to court at the courthouse in

Markham, Illinois.  (Defs.' LR 56.1(a)(3) Stmt. ¶ 19.)  Lawson did not complain about his injuries

while in court. and did not speak with Superintendent Thomas about the incident until two weeks

later.  (*Id.* ¶ 20.)

Lawson states that he was familiar with the grievance process at the jail.  (*Id.* ¶ 25.)  On

May 29, 2009, he wrote a grievance about the stabbing incident, which was given the control

number 2009 X 1123.  (*Id.* ¶ 26.)  He gave the grievance to his social worker on June 8, 2009.  (*Id.*)

On June 19, 2009, Lawson received a response that denied his grievance and referred the grievance

to the Division's Physician and Patient Care Services.  (*Id.* ¶ 27.)  On the form, Lawson wrote

"6/19/09" as the date he requested the appeal, but he did not write anything in the section provided

for him to state the basis for an appeal.  (*Id.*)  Though he had filed several prior grievances, this

was his first appeal.  (Defs.' Ex. 1, Pl.'s Dep. 62-63.)  The record is unclear as to what happened to

the grievance after this point, but it appears that no appeal was taken.  (*Id.*; Defs.' Ex. 2, Detainee's

Grievance at 2.)

**<u>Discussion</u>**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In determining the existence of a genuine issue of material fact, the court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the nonmoving party based upon the record. *See id.* at 252; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983. To bring a claim under § 1983, plaintiff must establish that: (1) he has been deprived of a federal right, (2) by a person acting under color of state law. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001).

Lawson asserts the following claims: (1) defendants acted with deliberate indifference to his safety by failing to have better security in his area of the jail in general and, more specifically, on January 28, 2009, when inmates escaped their cells and attacked him, and (2) defendants acted with deliberate indifference to his resulting injuries, *i.e.*, the stab wound to his arm and the bone sticking out of his hand. Although Lawson does not specify whether he is suing each defendant in

his individual capacity, official capacity or both, the complaint suggests that he is suing Officers Barnes and Hopkins in their individual capacity for failing to protect him on the morning of January 28, 2009 and Executive Director Godinez and Superintendent Thomas in their official capacity for failing to keep his area of the jail secure and weapon-free.

## I. Failure to Protect

The Eighth Amendment, as applied to the various states through the Fourteenth Amendment, requires prison officials to "take reasonable measures to guarantee the safety of the inmates."[2] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation omitted). "While prison officials have a duty to protect inmates from violence at the hands of other inmates, not every injury within a prison is an Eighth Amendment violation." *Washington v. LaPorte Cnty. Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002). To prove a failure to protect claim, a plaintiff must establish that: (1) he faced a substantial risk of serious injury, and (2) the defendant acted with deliberate indifference to that risk. *Farmer*, 511 U.S. at 834; *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). Mere negligence is insufficient. *Farmer*, 511 U.S. at 835. The officer must have actually known of a substantial risk of harm to the plaintiff's safety, yet failed to take appropriate steps to protect him from the specific danger. *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008).

---

[2] Because Lawson was a pre-trial detainee at the time of his injuries, his § 1983 claim is analyzed not under the Eighth Amendment but under the Due Process Clause of the Fourteenth Amendment. *See Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002). However, the deliberate indifference standard applies with as much force in cases involving pre-trial detainees. *Estate of Cole v. Fromm*, 94 F.3d 254, 259 (7th Cir. 1996); *Salazar v. City of Chi.*, 940 F.2d 233, 237-41 (7th Cir. 1991).

In other words, knowledge of only a general risk of violence is insufficient. *Id.*; *Fisher v. Lovejoy*, 414 F.3d 659, 664 (7th Cir. 2005); *Brown*, 398 F.3d at 909. A failure-to-protect claim usually requires proof that the officer knew of a risk of violence specific to the inmate. *See Fisher*, 414 F.3d at 664; *Butera*, 285 F.3d at 607.

In this case, Lawson does not allege that he or any defendant was aware of a specific threat of harm to him. It is undisputed that Lawson did not inform any of the defendants that he had been threatened or that he feared an attack from another inmate or another group of inmates in Tier 1G, and it is apparent from his description of the incident that the violence he encountered on January 28, 2009, was a random occurrence. (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 13-14; Defs.' Ex. 1, Pl.'s Dep. 25-39.) A failure to provide adequate security in general, however, is insufficient to establish a constitutional claim of deliberate indifference to protect. *See Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008) (holding that negligence with regard to providing security in general is insufficient to prove a constitutional violation); *see also Dale v. Poston,* 548 F.3d 563, 569 (7th Cir. 2008) (stating that prisons are inherently dangerous places, and officers cannot be held liable for every injury an inmate receives at the hands of another inmate).

Further, Lawson does not contend that Barnes and Hopkins intentionally allowed inmates out of their cells or deliberately provided less security on January 28, 2009. It is undisputed that: (1) one inmate got out of his cell, entered the control area and opened cell doors; (2) as soon as Officer Barnes realized that twelve to fifteen inmates had begun to exit their cells and fight each other, he immediately called an "all available" alert, which requested that all available jail personnel respond and provide assistance; (3) Officers Barnes and Hopkins then waited outside of Tier 1G for approximately two to three minutes until backup officers arrived and together, they all

entered Tier 1G.  (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 6-14; Defs.' Ex. 1, Pl.'s Dep. 18-26; Defs.' Ex. 5, Barnes Aff. ¶¶ 6-11, July 29, 2010.)  Given these undisputed facts, Lawson has failed to establish a triable issue as to whether Officers Barnes and Hopkins acted with deliberate indifference to a substantial risk of serious injury.  Thus, the Court grants defendants' motion for summary judgment as to Lawson's claims against them in their individual capacity.

Nor can Lawson succeed with regard to his claim against Director Godinez and Superintendent Thomas in their official capacity for failing to protect him.  "When a plaintiff sues an individual officer in his official capacity, the suit is treated as if the plaintiff has sued the [local governmental entity] itself." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006).  To allege liability against a local governmental entity under § 1983, the alleged constitutional violations must be caused by one of the entity's policies.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  A policy, in this context, means (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) action by a person with final policymaking authority.  *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000).

Lawson does not argue that CCJ had an express policy that caused his constitutional deprivation.  Rather, Lawson argues that CCJ has a practice or custom of insufficient security and that officers often did not repair fixtures (lights and exit signs) that could be used to make weapons.  However, he fails to cite any incidents other than the one that occurred on January 28, 2009.  (*See* Pl.'s Resp.)  "[P]roof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference." *Klebanowski*, 540 F.3d at 637 (quoting *Palmer v. Marion Cnty.*, 327 F.3d 588, 595 (7th Cir. 2003); *see Fisher v. Sheahan*, No. 01 C 9085,

2002 WL 31017915, at *2 (N.D. Ill. Sept. 9, 2002) ("[T]he fact that these inmates in this instance had homemade weapons, does not mean that the sheriff has a policy or practice of allowing such weapons to exist.").  The January 28, 2009 incident, by itself, is insufficient to establish that the CCJ had a practice of providing insufficient security and allowing homemade weapons.

Lastly, even if the Court were to hold that Godinez and Thomas are final policymakers for CCJ, Lawson fails to present any facts from which a jury could infer that Godinez or Thomas was aware of a substantial risk of inmate escapes and inmate attacks in Tier 1G that was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past."  *See Washington*, 306 F.3d at 519 (quotation omitted).  Tier 1G is an administrative segregation unit in which each detainee is allowed to be out of his cell for one hour per day, and only one cell is allowed to be out at a time.  (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 1, 3; Compl. ¶ V.1.)  Given that Lawson admits that CCJ controls inmate movement and interaction in Tier 1G in this manner, Lawson has failed to create a triable issue as to whether inmate escapes and inmate attacks in Tier 1G has consistently been a problem in the past, beyond the single incident on January 28, 2009.

Even if the Court were to assume for the sake of argument that Lawson had presented sufficient evidence to create an issue of material fact regarding Godinez or Thomas' knowledge of an obvious risk, the undisputed facts show that neither Godinez or Thomas acted with deliberate indifference.  As stated above, establishing that an officer acted with deliberate indifference requires more than a showing of negligence or even gross negligence, plaintiff must prove that the officer acted with the equivalent of criminal recklessness.  *Fisher*, 414 F.3d at 662; *see O'Malley v. Litscher*, 465 F.3d 799, 806 (7th Cir. 2006) (defining the criminal recklessness standard for purposes of deliberate indifference as "ignoring a known risk").  "Indeed, prison officials who

actually knew of a substantial risk to inmate health or safety are free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that they were deliberately indifferent." *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). Lawson states that during the January 28, 2009 incident, after he heard the cell doors pop open, he looked out of his chuckhole for forty-five seconds and attempted to hold the cell door closed for a couple of seconds, but three other detainees forced themselves into his cell and wrestled him for about two minutes and while they were wrestling, one of the inmates stabbed him in the arm with a piece of sharpened metal. (Defs.' Ex. 1, Pl.'s Dep. 11, 35, 38.) After a few minutes, the guards came in, demanded that everyone in the dayroom get on the floor, cuffed inmates, removed inmates from certain cells and locked detainees back in their cells. (*Id.* 11, 38.) Given these undisputed facts in the summary judgment record, there is no triable issue with regard to whether Godinez and Thomas' implementation and/or carrying out CCJ policies was a reasonable response to the risk to inmate safety. Accordingly, they are entitled to summary judgment as to plaintiff's failure-to-protect claims.

## II.     Deliberate Indifference to Medical Needs

To sustain a § 1983 claim of deliberate indifference to a serious medical need, a plaintiff must prove: (1) that he had an objectively serious medical condition; (2) that the defendant acted with deliberate indifference to the condition; and (3) that the defendant's indifference caused plaintiff's injury. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes v.*

*Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). The condition need not be life-threatening, and a condition that would result in further significant injury or unnecessary pain if not treated is sufficient. *See Gayton*, 593 F.3d at 620. A defendant acts with deliberate indifference only if he had both (1) actual, subjective knowledge of the risk to the inmate's health; and (2) disregarded that risk. *Id.* "[A]n official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Higgins v. Corr. Med. Serv. of Ill., Inc.*, 178 F.3d 508, 510 (7th Cir. 1999)).

During the January 28, 2009 incident, Lawson's arm was sliced with a sharp object and his hand was slammed in his cell door. (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 15-16.) Lawson acknowledges that these injuries were not life-threatening. (*See* Pl.'s Resp. 1-2.) Lawson states that his arm was not bleeding much and was "just spotty" and he was able to stop the bleeding with tissue from his cell. (Defs.' Ex. 1, Pl.'s Dep. 45.) The transcript of his court appearance later that morning shows that he did not complain about any need for medical attention. (Def.'s Ex. 4, 1/28/09 Hr'g Tr., *State v. Lawson*, No. 06 CR 20688.) Furthermore, an x-ray of his hand taken in July 2009 indicated that he had no broken bones. (Defs.' Ex. 1, Pl.'s Dep. 53-54.)

It is not clear from the record whether Lawson's injuries were objectively serious. However, even if the Court were to assume that they were, the record clearly shows that none of the defendants acted with deliberate indifference with respect to Lawson's injuries.

Lawson stated that he began asking for medical attention almost immediately after the incident in his cell. (*Id.* 40-41.) Plaintiff first attempted to get medical attention while officers were trying to get everyone back into their cells. (*Id.* 40.) Plaintiff could see four to five other injured inmates in the dayroom. (*Id.* 41.) A sergeant, who is not named as a defendant in this case,

walked by Lawson's cell, asked if he needed medical attention and then ordered that Lawson be taken out of his cell. (*Id.* 41-42.) The sergeant saw the puncture wound to Lawson's arm. (*Id.* 42.) Lawson was taken to see a nurse later that morning before he went to court, and the nurse dressed the puncture wound with gauze and tape. (*Id.* 43-44, 46.) Lawson did not fill out a request for medical attention for injuries sustained during the January 28, 2009 incident until May 29, 2009. (*Id.* 51-52; *id.*, Ex. 1-ID, 5/29/09 Detainee Grievance.) Lawson knew how to submit medical requests and had done so for other conditions between those dates. (Defs.' Ex. 1, Pl.'s Dep. 50-51.) His May 29, 2009 grievance stated that: (1) he received only some medical attention after the incident, (2) he had requested several times for medical attention, and he still had a bone sticking out of his hand from his cell door slamming on it. (*Id.*, Ex. 1-ID, 5/29/09 Detainee Grievance.) On June 8, 2009, the grievance was given to Lawson's social worker, and on June 10, 2009, the social worker referred the grievance to the division's physician and patient care services. (*Id.*; *see* Def.'s Ex. 2, C.C.D.O.C. Detainee Grievance/ Referral & Response; Def.'s Ex. 3, Mueller Aff. ¶ 5, July 23, 2010.) On July 1, 2009, x-rays were taken of Lawson's hand, which showed no fractures. (Defs.' Ex. 1, Pl.'s Dep. 53-54.) It appears that defendants were not among those jail officials who addressed Lawson's grievance. (*Id.*) In September 2009, Lawson filed another request for medical attention for his hand. (*Id.* 53-54.) He stated in his request that nothing had changed since the x-rays were taken on July 1, 2009 but that he disagreed with the x-ray results. (*Id.*)

The undisputed facts in the record show that plaintiff's medical conditions were treated between the time of the incident (around 3:30 a.m.) and the time he went to court later that morning. (*Id.* 42-45.) Four months later, when he submitted his first medical request form based on his injuries from the incident, he was referred to the division's physician and patient care services and then later to have an x-ray taken, which he acknowledged showed that no bones had been fractured.

(*Id.* at 52-54.)  Most importantly, Lawson provides no indication as to whether defendants were aware of his medical conditions and whether they participated in the conduct upon which this claim is based.  *See Steidle v. Gramley*, 151 F.3d 739, 741 (7th Cir. 1998) ("A warden is not liable for an isolated failure of his subordinates to carry out prison policies, however–unless the subordinates are acting (or failing to act) on the warden's instructions."); *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) ("Section 1983 creates a cause of action based upon personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.")  Further, the record shows that Lawson's complaint regarding the lack of medical care was investigated and referred to medical providers.

Even if the Court were to assume that defendants were somehow involved, the record clearly shows that Lawson's complaints were not ignored.  *See, e.g., Hayes*, 546 F.3d at 527 (stating that non-medical officials cannot be held to be deliberately indifferent where a complaint is investigated and referred to medical providers).  Defendants are thus entitled to summary judgment on this claim.

## Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment [doc. no. 29].  This case is hereby terminated and all other pending motions are stricken as moot.

**SO ORDERED**                                   **ENTERED:**


**March 22, 2011**

_____
**HON. RONALD A. GUZMAN**
**U.S. District Court Judge**

12